```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MUHAMMAD GREEN,

                       Petitioner,                        REPORT AND
                                                          RECOMMENDATION
    -against-
                                                          05-CV-3425 (NGG) (RML)
DALE ARTUS, Superintendent,
Great Meadow Correctional Facility,

                       Respondent.
----------------------------------------------------------X
```

LEVY, United States Magistrate Judge:

Petitioner *pro se* Muhammad Green ("petitioner" or "Green") brings this action pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. By order dated January 13, 2006, the Honorable Nicholas G. Garaufis, United States District Judge, referred this matter to me for a report and recommendation. For the reasons stated below, I respectfully recommend that the petition be denied.

## BACKGROUND AND FACTS

On September 6, 2001, petitioner and his co-defendant, Randy Roberts ("Roberts"), were arrested and charged in Queens County with one count of Robbery in the First Degree (N.Y. Penal Law § 160.15[3]), two counts of Robbery in the Second Degree (N.Y. Penal Law § 160.10[1]), one count of Robbery in the Third Degree (N.Y. Penal Law § 160.05), one count of Grand Larceny in the Fourth Degree (N.Y. Penal Law § 155.30[5]), and one count of Criminal Possession of Stolen Property (N.Y. Penal Law § 165.40). (See Affidavit of Tziyonah M. Langsam, Esq., dated Sept. 6, 2005 ("Langsam Aff."), ¶ 6.)

This case arose out of a robbery in Brooklyn. (Id. ¶ 5.) On the evening of September 6, 2001, Hernando Campo ("Campo") was robbed by two men at knifepoint as he

stopped at a gas station at East Second Street and Cortelyou Road. (Id.; see also Brief for Defendant-Appellant, dated Feb. 6, 2004 ("Appellant's Mem."), at 3, 8.)[1] The assailants took numerous items from Campo, including a $100 bill, a $2 bill, a gold necklace and medallion, and a walkie talkie. (Langsam Aff. ¶ 5; Appellant's Mem. at 8.) Campo attempted to chase the assailants, but an unidentified third assailant clubbed Campo in the head with a metal object, knocking him to the ground. (Langsam Aff. ¶ 5; Appellant's Mem. at 8-9.)

Immediately after Campo called 911 the police operator relayed that the perpetrators were three black men in their thirties who fled down Cortelyou Road. (See Appellant's Mem. at 3, 6.) The radio transmission also informed the police that one of the men was wearing a brown jacket and a hat, the second was wearing a white shirt and blue pants, and the third was wearing blue pants with white stripes. (See Suppression Hearing, dated June 13, 2002 ("SH"), at 65; Respondent's Memorandum of Law, dated Sept. 6, 2005 ("Respondent's Mem."), at 8; Appellant's Mem. at 3.)[2] Approximately five to ten minutes later, two undercover police officers who heard the radio transmission observed Green and co-defendant Roberts walking along Coney Island Avenue within blocks of the crime. (SH at 61, 66; Langsam Aff. ¶ 5.) The officers believed that Green matched the description of one of the suspects because he appeared to be in his thirties, and was wearing a hat and a light jacket. (SH at 66-67.) The police approached the two suspects after observing them walking quickly into a store once they

---

[1] This court does not have the trial transcript; however, reference to the transcript is unnecessary for purposes of this petition.

[2] At trial, Campo testified that, during the call, he mistakenly described the third robber twice rather than describe the driver-side robber (Roberts), who wore a multi-colored shirt. (Appellant's Mem. at 9.) Roberts's fingerprint was later found on the driver's side of Campo's van. (Id. at 9-10.)

2

made eye contact with the officers.  (SH at 67; Langsam Aff ¶ 5; Appellant's Mem. at 3.)  After Green gave relatively vague answers to the officers' questions, the suspects were detained.  (SH at 68.)

About a minute later, Campo was brought to the scene by police, and according to the police, he pointed at the suspects and yelled, "that's them, that's them."  (SH at 70; Langsam Aff. ¶ 5; see also Appellant's Mem. at 3.)  The police arrested Green and Roberts, and found Campo's cash and walkie talkie in their possession.  (SH at 71; Langsam Aff. ¶ 5; Appellant's Mem. at 3.)  The police later recovered Campo's gold necklace and medallion from co-defendant Roberts.  (Langsam Aff. ¶ 5; Appellant's Mem. at 6.)

Before trial, petitioner moved to suppress the complainant's identification of the defendants.  On June 13, 2002, the court conducted a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967), and Dunaway v. New York, 442 U.S. 200 (1979).  On August 1, 2002, the court ruled that the police officers had reasonable suspicion to stop and detain the two defendants.  (See Respondent's Ex. A, Part 2, at 5 (finding that the defendants were close to the scene of the crime, they quickly entered the store upon observing the officers and petitioner Green matched the description of one of the assailants).)  The court also found that the complainant's identification of the defendants was not unduly suggestive.  (Id. at 6) (finding that the police did no more than bring the victim to the defendants and the victim's identification was self-initiating and spontaneous).)

After a jury trial, petitioner was convicted of one count of Robbery in the Second Degree (N.Y. Penal Law § 160.10[1]).  On September 17, 2002, the court sentenced petitioner, as a persistent felony offender, to a prison term of twenty-two years to life.  Co-

defendant Roberts pled guilty to Robbery in the First Degree and was sentenced to a prison term of thirteen years. Petitioner appealed from his judgment of conviction to the New York Supreme Court, Appellate Division, Second Department (the "Appellate Division"). See N.Y. Crim. Proc. Law § 450.10(1). Appellate counsel filed a brief on petitioner's behalf that raised the following claims: (1) the police did not have reasonable suspicion to detain petitioner for a show-up; and (2) petitioner's sentence of twenty-two years to life was excessive in light of his criminal history and because the complainant was not injured. (See Appellant's Mem.)

By unanimous decision dated September 13, 2004, the Appellate Division affirmed petitioner's conviction. People v. Green, 781 N.Y.S.2d 700 (2d Dep't 2004). The Appellate Division held that petitioner had "failed to preserve for appellate review his claim that the police lacked reasonable suspicion to detain him for a show-up identification by the complainant because he did not match the description of the robbers given over a police radio transmission." Id. Nonetheless, the court found that the officers had reasonable suspicion to pursue, stop and detain petitioner based upon the content of the police dispatcher's radio transmission. The court found the detention lawful based on a "general description of one of the perpetrators, which matched the defendant [Green], the close proximity of the defendant [Green] to the site of the crime, and the short passage of time between the crime and the observation of the defendant [Green]." Id. In addition, the Appellate Division determined that the sentence imposed was not excessive. Id.

Petitioner applied for permission to appeal to the New York Court of Appeals. In addition to the claims asserted in his appeal to the Appellate Division, petitioner requested that the court consider whether trial counsel was ineffective for failing to preserve the underlying

4

claim.  By certificate dated November 29, 2004, the Court of Appeals denied the application for leave to appeal.  People v. Green, 821 N.E.2d 978 (N.Y. 2004).

By *pro se* motion dated April 19, 2005, petitioner moved in Supreme Court, Kings County, pursuant to N.Y. Crim. Proc. Law § 440.20, to set aside his sentence.  Petitioner claimed that the sentence was imposed without review of a pre-sentence report, in violation of N.Y. Crim. Proc. Law § 390.20(1); that he was denied the right to controvert the constitutionality of his previous convictions (which made him eligible for enhanced sentencing); and that he was not given a proper opportunity to speak before the sentence was imposed.  (See Respondent's Ex. D.)  By decision and order dated July 14, 2005, the court denied petitioner's motion to set aside his sentence.  (Respondent's Ex. F.)  The court noted that the Appellate Division had already determined that the sentence imposed was not excessive.  (Id.)  Further, the court determined that a pre-sentence report was received by the court prior to the imposition of petitioner's sentence, and that petitioner was asked to make a statement during sentencing, but declined.  (Id.)  Petitioner did not seek permission to appeal to the Appellate Division from the order denying his motion.

Green filed the instant habeas corpus petition on July 5, 2005.  In his petition, Green raises essentially three grounds for relief.  He contends that: (1) the police did not have reasonable suspicion to stop and detain him; (2) his trial counsel was ineffective because he failed to raise the argument that the police did not have reasonable suspicion to stop and detain him, and thus failed to preserve the issue for appellate review; and (3) his sentence was excessive considering the victim was not injured.

5

## DISCUSSION

A. Jurisdictional Requirements

A petitioner seeking habeas corpus review must satisfy certain jurisdictional requirements. The first line of inquiry is whether the petition is barred by the applicable statue of limitations. In Lindh v. Murphy, 521 U.S. 320 (1997), the Supreme Court held that the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-32, tit. I, § 104 (1996), which imposes a one-year statute of limitations on habeas corpus petitions, applies prospectively to "the general run of habeas cases" that are "filed after the date of the Act." Lindh, 521 U.S. at 327; see also Boria v. Keane 90 F.3d 36, 37-38 (2d Cir. 1996) (per curiam). AEDPA states in pertinent part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of - (A) the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1). Here, Green filed his petition on July 5, 2005, well after the effective date of the Act. According to Lindh, AEDPA's provisions, including the one-year statute of limitations, apply to his petition. Thus, to determine whether the petition is timely under the provisions of the Act, the court must calculate one year from the latest of the dates provided for in 28 U.S.C. § 2244(d). A conviction becomes "final" under AEDPA when the highest state court concludes its direct review or when the time to seek direct review in the United States Supreme Court by writ of certiorari expires (which is ninety days after entry of the judgment of conviction or of the order denying discretionary review). See Williams v. Artuz, 237 F.3d 147,

6

151 (2d Cir. 2001).

Green appealed the judgment of conviction against him to the Appellate Division, Second Department, which denied his claims on September 13, 2004. The New York Court of Appeals then denied his application for leave to appeal on November 29, 2004. His judgment then became "final" ninety days later, on February 29, 2004. Green filed his petition on July 5, 2005, well within the one-year statutory period. The petition therefore satisfies the requirements of section 2244(d).

B. Reasonable Suspicion

A federal court, when reviewing a habeas petition from a state prisoner, cannot consider the merits of a federal constitutional claim when the state court has explicitly rejected the claim on the basis of an adequate and independent state ground. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Epps v. Commissioner of Correctional Servs., 13 F.3d 615, 617 (2d Cir. 1994). According to the Supreme Court, "the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism," and without this rule, state prisoners would be offered an "end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws." Coleman, 501 U.S. at 730-31. This rule applies "whether the state law ground is substantive or procedural." Id. at 729.

At the suppression hearing, Green's counsel asserted only that the victim's identification of the petitioner was suggestive. (SH at 84.) On appeal to the Appellate Division, petitioner contended, for the first time, that the police officers lacked reasonable suspicion to stop and detain him. The Appellate Division rejected the petitioner's reasonable suspicion claim

7

as unpreserved. Green, 781 N.Y.S.2d 700 ("The defendant failed to preserve for appellate review his claim that the police lacked reasonable suspicion to detain him . . . ."). New York State's contemporaneous objection rule, which requires a party to make his or her position with respect to a ruling or instruction known to the trial court, is an adequate and independent ground for decision. See Rodriguez v. Schriver, 392 F.3d 505, 511 (2d Cir. 2004); Valesquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

Further, when "a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of a federal claim," a federal habeas court is foreclosed from reviewing the claim. Velasquez, 898 F.2d at 9. See also Young v. McGinnis, 411 F. Supp. 2d 278, 298 (E.D.N.Y. 2006). Thus, even though the Appellate Division considered the merits of the claim in the alternative, federal habeas review of the claim is still precluded because "the state court explicitly invoke[d] a state procedural bar rule as a separate basis for decision." Harris v. Reed, 489 U.S. 255, 264, n. 10 (1989).

However, defaulted claims will be considered by a habeas court upon a showing of cause for the default and actual prejudice or a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750. A petitioner may establish cause by showing "that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable." Id. at 753 (internal citations and quotations omitted). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Torres v. Senkowski, 316 F.3d 147, 152 (2d Cir. 2003) (quotation

marks omitted). Here, there was nothing preventing Green's trial counsel from preserving this claim for appellate review. He therefore cannot demonstrate cause for the default.

If the petitioner cannot show cause and prejudice, he may "bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995). Petitioner does not claim actual innocence. As such, he cannot demonstrate a fundamental miscarriage of justice. See Coleman, 501 U.S. at 731-32. Accordingly, this court is barred from reaching the merits of this claim.

Furthermore, petitioner did not raise an ineffective assistance of counsel claim on appeal to the Appellate Division. Petitioner cannot now establish cause for his procedural default by accusing his trial counsel of ineffective representation. According to the Second Circuit, "a petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred." Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997). See also Wyldes v. Hundley, 69 F.3d 247, 253 (8th Cir. 1995) ("Because [petitioner] did not give the [state] courts an opportunity to consider whether his lawyers were incompetent for failing on direct review to present the federal juror misconduct claim, that assertion is now barred. Therefore, he cannot establish cause sufficient to overcome his procedural default of the misconduct issue."). See also Sweet v. Bennett, 353 F.3d 135, 140-41

(2d Cir. 2003).[3]

Green had a different attorney at the appellate level; as such, he cannot demonstrate cause for failing to raise his ineffective assistance of trial counsel claim on direct appeal. See Ferron v. Goord, 255 F. Supp. 2d 127, 133-34 (S.D.N.Y. 2003). Petitioner could have raised an ineffective assistance claim on appeal; because he did not, he is now precluded from raising this claim in a motion to vacate judgment, pursuant to N.Y. Crim. Proc. § 440.10, as that claim is procedurally barred from federal review. Moreover, petitioner cannot demonstrate any prejudice because the hearing court has already determined that the police had reasonable suspicion to stop him. (Respondent's Ex. A, Part 2, at 5.)

The Second Circuit has held that, even when a state court reviews a Fourth Amendment claim on the merits, a federal habeas court may only review that claim if (1) the state has provided no corrective procedure to redress the alleged Fourth Amendment violation, or (2) the prisoner was precluded from using that mechanism "because of an unconscionable breakdown in the underlying process." Cappellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Federal courts have approved of New York's procedure for litigating Fourth Amendment claims as set forth in Section 710.10 of the New York Criminal Procedure Law. See id. at 70, n. 1. At the suppression hearing, petitioner had a full and fair opportunity to litigate the issue of whether the police had reasonable suspicion to stop and detain him. The state court determined that the

---

[3] In Sweet, the Second Circuit noted that there is nothing in Massaro v. United States, 538 U.S. 500 (2003), that disturbs its conclusion, as Massaro relates to § 2255 petitions, not § 2254. 353 F.3d at 140. See also Fuentes-Cruz v. Berbary, CV 04-2480 (ADS) (ETB), 2005 U.S. Dist. LEXIS 32396, at *6-7 (E.D.N.Y. Sept. 9, 2005).

stop was based on reasonable suspicion. (See Respondent's Ex. A, Part 2; Appellant's Mem. at 3-9.) The Appellate Division also rejected petitioner's claim, and the Court of Appeals denied the petitioner permission to appeal further. Petitioner had a full and fair opportunity to litigate this claim in state court. Ortiz v. Artuz, 113 F. Supp. 2d 327, 335-36 (E.D.N.Y. 2000). I find that the state courts conducted a reasonable inquiry into the facts and law, and therefore, "petitioner was not the victim of an unconscionable breakdown in state procedure and his Fourth Amendment claim is unreviewable by this court." Id. at 336. See also Stanley v. Kuhlman, 10 F. Supp. 2d 250, 253 (E.D.N.Y. 1998); Velez v. New York, 941 F. Supp. 300, 314 (E.D.N.Y. 1996). A federal court is not permitted to judge the merits of the state court's decision, as "a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result." Capellan, 975 F.2d at 71. Accordingly, I respectfully recommend that petitioner's Fourth Amendment claim be denied.

    C. Excessive Sentence

At Green's sentencing, his counsel requested that he be sentenced to 16 years to life, the minimum under the applicable statute. Petitioner was sentenced to 22 years to life on September 17, 2002. In his habeas corpus petition, Green alleges that the sentencing judge "failed to properly address the standards-factors to be considered when imposing a sentence, violating due process." As such, he alleges that his sentence was excessive "considering circumstances and past history." (Petition at 10.) When the state court has rejected the petitioner's claim on the merits, as is the case here, a federal court considering a habeas corpus petition under 28 U.S.C. § 2254, as amended by AEDPA, must defer to the state court's rejection of the claim, and must deny the writ unless the state-court adjudication (1) "was contrary to," or

11

(2) "involved an unreasonable application of," clearly established federal law "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Williams v. Taylor, 529 U.S. 362, 367 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005). In this case, the Appellate Division explicitly stated that "the sentence imposed was not excessive." Green, 781 N.Y.S.2d at 700. Therefore, the deferential standard of AEDPA applies to review of this claim.

In Williams, the Court held that "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 413. The Second Circuit has concluded that an "objectively unreasonable" application of Supreme Court precedent falls somewhere between "merely erroneous and unreasonable to all reasonable jurists." Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000). "If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

The prosecution in this case argued for a maximum sentence of twenty-five years to life, which the sentencing judge rejected. It is clear that petitioner's sentence falls within the sentencing limits set by the state legislature. See N.Y. Penal Law § 70.10. The Second Circuit has found that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (citation omitted). See also Harris v. Woods, 2006 U.S. Dist. LEXIS 24608, at *151 (S.D.N.Y. May 1, 2006); Acosta v. Giambruno, 326 F. Supp. 2d 513, 523 (S.D.N.Y. 2004). This is because issues of sentencing rationales and ranges are "generally a policy choice to be made by state legislatures, not federal

courts." Ewing v. California, 538 U.S. 11, 25 (2003).

Under the Eighth Amendment, a criminal sentence must be proportionate to the crime for which the defendant has been convicted. See U.S. Const. amend. VIII. However, "the decision of a sentencing judge is entitled to substantial deference," and therefore, "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." United States v. Persico, 853 F.2d 134, 138 (2d Cir. 1988) (quoting Solem v. Helm, 463 U.S. 277, 290, n. 16 (1983)). Thus, "[w]hen a defendant's sentence falls within the statutory range, it will not be set aside on appeal absent extraordinary circumstances. . . ." United States v. DiTomasso, 817 F.2d 201, 217 (2d Cir. 1987).

Robbery in the Second Degree is a Class C felony. N.Y. Penal Law § 160.10. Penal Law § 70.08, concerning sentencing for persons found to be persistent violent felony offenders, states:

> (2) When the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent violent felony offender the court must impose an indeterminate sentence of imprisonment, the maximum term of which shall be life imprisonment. . . . (3) The minimum period of imprisonment under the indeterminate life sentence for a persistent violent felony offender must be fixed by the court as follows: . . . . (b) For a class C felony, the minimum period must be *at least sixteen years and must not exceed twenty-five years.*

N.Y. Penal Law § 70.08 (emphasis added).[4] Petitioner does not challenge the court's finding that he had twice been convicted of Second Degree Robbery and therefore was properly deemed

---

[4] Amendments due to become effective September 1, 2009 will change the minimum term of imprisonment for a Class C Felony to "at least eight years" and no more than twenty-five years. See N.Y. Penal Law § 70.08.

13

a persistent violent felony offender.[5] Petitioner's sentence of twenty-two years to life on his conviction of Robbery in the Second Degree is therefore *below* the statutory limit.[6] Petitioner has failed to demonstrate that the Appellate Division's decision to affirm his sentence was either "contrary to" or an unreasonable application of clearly established federal law, as Green's sentence was within the legally permissible range. 28 U.S.C. § 2254(d)(1). Nor was the decision "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). I therefore respectfully recommend that this claim be denied.

---

[5] New York's Penal Law defines a "persistent violent felony offender" as "[a] person who stands convicted of a violent felony offense as defined in subdivision one of section 70.02 [which includes a Class C violent felony offense] after having previously been subjected to two or more predicate violent felony convictions as defined in paragraph (b) of subdivision one of section 70.04." N.Y. Penal Law § 70.08. In 1990, petitioner was adjudicated a youthful offender after pleading guilty to Attempted Robbery in the Second Degree. (Appellant's Mem. at 10.) He ultimately served one year in prison for that offense along with a concurrent sentence for his 1991 conviction for petit larceny. (Id.) In 1993, appellant was convicted of Attempted Second-Degree Robbery, for which he was sentenced to one to three years of incarceration. (Id.) While on parole in 1996, appellant was again convicted of Attempted Second-Degree Robbery and sentenced to five years in prison. (Id.)

[6] Petitioner argues that his sentence was excessive in light of the fact that there was no injury to the victim. However, N.Y. Penal Law § 160.10[1] states that a person is guilty of Robbery in the Second Degree when he "forcibly steals property and when:
1. He is aided by another person actually present." Unlike § 160.10[2](a), physical injury to the victim is not required. It bears noting, however, that the victim in this case was clubbed in the head during the robbery.

14

CONCLUSION

For the reasons set forth above, I respectfully recommend that this petition for a writ of habeas corpus be denied. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Garaufis and to my chambers, within ten (10) business days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       June 23, 2006